**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 2, 2020

**BY ECF**
Honorable William H. Pauley III
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:   *United States v. David Crosby*, 9 Cr. 1056 (WHP)

Dear Judge Pauley:

The Government writes in response to defendant David Crosby's (the "defendant" or "Crosby") Letter Motion for a Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion"), dated March 30, 2020.  Because Crosby has failed to exhaust his administrative remedies, the Government respectfully requests that the Court deny the Motion.

### I. Background

David Crosby is a 43-year old defendant.  In brief, the defendant was convicted in the United States District Court for the Southern District of New York, 09 Cr. 1056 (WHP), of conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846. In connection with this conviction, on February 15, 2011, the defendant was sentenced to a term of 166 months' imprisonment followed by a term of five years' supervised release.

### II. The Motion

The defendant, who is due to be released on October 11, 2021, is currently housed at the New York Metropolitan Correctional Center ("MCC"), where he seeks compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A).  (Mot. at 1).  Specifically, the defendant requests that the Court order his immediate release to home confinement to serve the rest of his sentence.  (*Id.*)  The primary bases for the defendant's request is that he is on the list of MCC inmates at high risk of contracting and/or suffering acutely from COVID-19, that he suffers from asthma, and that he has previously had his spleen removed.  (*Id.* at 3).  The Motion claims that on or about March 30, 2020, the defendant submitted a letter to the warden of the MCC for compassionate release.  (*Id.* at 2),

### III.  <u>Argument</u>

For the reasons set forth below, the defendant's motion should be denied.  Under Section 3582(c)(1)(A), the Court does not have the authority to waive express statutory requirements governing when and how district courts may consider a motion for compassionate release. Therefore, the defendant cannot apply for judicial intervention until thirty days from the date the warden of the MCC receives from the defendant his petition for compassionate release.

If, however, the Court disagrees, the Government respectfully requests that any release should only be if the defendant establishes circumstances that better protect him from COVID-19 and protect society from its spread.  The Government respectfully requests that those conditions include release from MCC and into home confinement, and that the defendant is adequately supervised by the Probation Office to protect himself and the public from further exposure to COVID-19.

#### A.  Applicable Law

Under 18 U.S.C. § 3582:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

A district court "may not" modify a term of imprisonment once imposed, except under limited circumstances.  On such circumstance, the so-called compassionate release provision, provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances."  18 U.S.C. § 3582(c)(1)(A)(i).  A motion under this provision may be made by either the Bureau of Prisons ("BOP") or a defendant, but a defendant may bring a motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *Id*.  Therefore, where a compassionate release motion is brought by a

defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Because the statute refers to the applicable policy statement in the Sentencing Guidelines, that policy statement furnishes the substantive criteria for relief. *See Dillon v. United States*, 560 U.S. 817, 827 (2010); 28 U.S.C. § 994(t).

The policy statement, which appears at Section 1B1.13 of the Guidelines, provides that a reduction of sentence is permitted if: "extraordinary and compelling reasons warrant the reduction," U.S.S.G. § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3). Like the statute, Section 1B1.13 requires consideration of the 18 U.S.C. § 3553(a) factors to the extent they are applicable. *Id.*

The Application Notes of § 1B1.13 describe multiple ways that a defendant can show an "extraordinary and compelling reason," but only two appear relevant here:

> (A)(ii)(I) – Medical Condition of the Defendant – The defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

> (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Notes 1(A)(ii)(I), (D). *See also United States v. Lisi*, 2020 WL 881994, at *3 (Feb. 24, 2020) (Failla, J.) (finding that with respect to the "catch-all category" listed in Application Note 1(D), the Court may independently evaluate whether a defendant has raised an extraordinary and compelling reasons for compassionate release).

The defendant is not relying on the other provisions of Application Note 1 outlined in subdivisions (B) or (C) and they do not apply here. The age of a defendant can justify compassionate release if he is at least 65 years old and certain other factors are present. Application Note 1(B). The defendant is only 43 years old. The defendant's family circumstances—such as the incapacitation of a close family member—can also provide an extraordinary and compelling reason. Application Note 1(C). But the defendant has not identified any relevant family circumstances.

As the movant, the defendant bears of the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same).

## B. The Motion is Barred Because Crosby Has Not Exhausted His Administrative Remedies

The defendant is not entitled to a reduction in his sentence because he failed to comply with the statutory requirements for making the Motion.  The statute only allows a defendant to make a motion for release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

To avoid these requirements, the defendant asks this Court to waive the mandatory time bar because of the extraordinary circumstances attendant to the COVID-19 pandemic.  However, bringing the Motion on an emergency basis does not obviate the need to comply with the mandates of the statute.  This failure alone is a sufficient basis to deny the motion.  *See Poole v. Mukasey*, 522 F.3d 259, 263 (2d Cir. 2008) ("Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them." (*quoting Bastek v. Fed. Crop Ins.,* 145 F.3d 90, 94 (2d Cir.1998))).

Section 3582(c)(1)(A)'s exhaustion requirement is mandatory.  Unlike judge-made exhaustion requirements, which are judge-made rules that "remain amenable to judge-made exceptions," *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016), statutory exhaustion requirements "stand[] on a different footing."  *Id*.  There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.*  Accordingly, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. *Id*.  *See id.* at 1856-58 (citing the Prison Litigation Reform Act's ("PLRA") demand that an inmate exhaust "such administrative remedies as are available," for the proposition that the only permissible exception to exhaustion is where the remedies are "unavailable"); *see also id*. at 1855 (criticizing the "freewheeling approach" adopted by some courts of appeals to exhaustion requirements, and overruling precedent from courts of appeals that had read exceptions into the rule).  Unlike the PLRA example, Section 3582(c)(1)(A) contains no qualifier that the defendant must exhaust all "available" remedies.  Thus, Section 3582(c)(1)(A) is a mandatory exhaustion provision with no applicable exceptions.  *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims).[1]

District Judge Denise Cote recently considered the nature of Section 3582(c)(1)A)'s exhaustion requirement, and held that if it set forth a statutory exhaustion requirement, that requirement must be "strictly enforce[ed]."  *See United States v. Monzon,* Opinion and Order dated Feb. 4, 2020 at 5, 99 Cr. 157 (DLC) (Dkt. No. 478), *citing Theodoropoulos v. I.N.S.,* 358 F.3d 162, 172 (2d Cir. 2004) ("[A]s a general rule, courts are required to strictly enforce statutory exhaustion requirements.").  *But see United States v. Wilson Perez*, No. 17 Cr. 513-3 (AT) (S.D.N.Y. Apr. 1, 2020) (granting a motion under 18 U.S.C. § 3582(c)(1)(A) and finding that "administrative

---

[1] *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019) is inapposite.  That case involved a judge-made exhaustion doctrine, not a mandatory, statutory exhaustion requirement.

exhaustion would defeat, not further, the policies underlying § 3582(c)" for a defendant who had less than three weeks remaining on his sentence).

In *Monzon*, Judge Cote held that Section 3582(c)(1)(A)'s exhaustion requirement is at least a claims-processing rule, meaning that its requirements are mandatory if timely raised. *(Monzon* at 5)*. (citing *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019). Such rules seek "to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Judge Cote further held that because the Bureau of Prisons had not brought the current motion and the petitioner had not exhausted his administrative remedies, the Court was statutorily barred from granting his request for sentence reduction. (*Monzon*, at 5).

Allowing parties to style requests for compassionate relief as "emergency" would allow litigants to create an end run around the process envisioned by Congress, particularly at a time when the BOP is facing an influx of similar requests, and there is a pronounced need for the orderly resolution of these requests on the timeline that Congress originally enacted in the statute. On March 26, 2020, the Office of the Attorney General issued a memorandum, *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic*, outlining specific guidance for the BOP to follow with respect to the prioritization of inmates suitable for home confinement.[2] Permitting the defendant to bypass the exhaustion requirement that permits the BOP to exercise its discretion and agency expertise in a timely manner in accordance with specified criteria *before* judicial intervention can be sought, undermines a consistent and safe process.

The defendant contends that Congress's intent behind the exhaustion requirement is satisfied because of the current public health situation related to COVID-19. (Mot. at 2 (citing § 3582(c)(1)(A)). This argument, however, ignores the statutory text and the First Step Act amendments, which contemplated life-threatening and time-sensitive medical emergencies. With these precise circumstances in mind, Congress required that timely actions be taken by BOP and that a 30-day exhaustion period be imposed *before* a defendant could seek independent judicial intervention as expressly noted in the statutory text. *See* 18 U.S.C. §§ 3582(c)(1)(A) (30-day requirement) and (d)(2)(A) (governing BOP notification requirements after a terminal illness diagnosis, requiring that the BOP (1) notify a defendant's attorney, partner, and family member within 72 hours of diagnosis so that they may prepare for a sentence reduction pursuant to (c)(1)(A) and, among other things, (2) process a terminally ill defendant's request for a sentence reduction pursuant to (c)(1)(A) not later than 14 days after receipt of such request)); First Step Act of 2018, PL 115-391, Dec. 21, 2018, 132 Stat 5194. Where Congress has directly spoken to the precise

---

[2] In assessing which inmates should be granted home confinement, BOP is to consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive factors: (i) the age and vulnerability of the inmate to COVID-19, in accordance with CDC guidelines, (ii) the security level of the facility currently holding the inmate, (iii) the inmate's conduct in prison, (iv) the inmates score under PATTERN, (v) whether the inmate has demonstrated a verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility, and (vi) the inmate's crime of conviction.

question at issue, and the intent of Congress is clear, as it is in the text of Section 3582, which requires a 30-day exhaustion period, the court "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007). The defendant also cites *Hendricks v. Zenon*, 933 F.2d 644, 672 (9th Cir. 1993) for the proposition that courts may dispense of exhaustion requirements in cases like Crosby's. (Mot. at 2). But *Hendricks* was a habeas case, not a case assessing Section 3582's mandatory exhaustion requirement, and the *Hendricks* court was confronted with a "rare case of peculiar urgency" because, at least in part, the delay in that case was caused by the state itself. By contrast, the Government here has not created any circumstances that would cause the Bureau of Prisons to delay responding to the defendant's application for compassionate release. Because the defendant has failed to exhaust the administrative requirement, his Motion should be denied.

### C. In the Alternative, Any Release Should Only Be If The Defendant Establishes Circumstances That Better Protect Him From COVID-19 And That Protect the Community From its Spread

If the Court finds that compassionate release is appropriate, the Government respectfully requests that any release should be subject to conditions that better protect the defendant from COVID-19 than a BOP setting and that protect the community from its spread. Specifically, the Government respectfully requests that Crosby not be released immediately to the general public, and that sufficient control measures be put into place to protect both Crosby and the public from further exposure to the virus. Such measures should include, but not be limited to, at least a 14-day quarantine period *before* release from MCC and home confinement thereafter, after Crosby's proposed location has been approved by Probation, consistent with the Attorney General's March 26, 2020 memorandum, *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic*.

### IV. <u>Conclusion</u>

Accordingly, because the Government is unaware of any authority that would permit the Court to waive the exhaustion requirements proscribed in Section 3582, the Government opposes the defendant's Motion.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _____
Brandon D. Harper
Assistant United States Attorney
(212) 637-2209

cc:  Ms. Dawn M. Cardi
     *Counsel for the Defendant*